IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 3, 2020

IN RE ELI H.

Appeal from the Chancery Court for Claiborne County
No. 19223          Elizabeth C. Asbury, Chancellor
_____

No. E2019-01028-COA-R3-PT
_____

The grandparents of a minor child filed a petition seeking to terminate the parental rights of the child's biological mother. Following a bench trial, the trial court terminated the mother's parental rights, determining that clear and convincing evidence existed to establish two statutory grounds for termination: (1) abandonment by failure to visit and (2) failure to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the child. The trial court also determined by clear and convincing evidence that termination was in the child's best interest. The mother has appealed. Following our thorough review of the record, we modify the trial court's judgment to include a determination of clear and convincing evidence of the additional statutory ground of persistence of the conditions leading to the child's removal from the mother's custody. We affirm the trial court's judgment in all other respects, including the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Jordan Long, Knoxville, Tennessee, for the appellant, Mary G.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellees, Melinda G. and Jackie G.

**OPINION**

I. Factual and Procedural History

On October 24, 2018, the petitioners, Melinda G. and Jackie G. ("Grandparents"), filed a petition in the Claiborne County Chancery Court ("trial court") seeking to

terminate the parental rights of Mary G. ("Mother") to her child, Eli H. ("the Child"), who was born in 2014.[1] In their petition, Grandparents stated that they had maintained legal custody of the Child since January 30, 2017, and that they had physical custody of the Child before that date. Grandparents averred that Mother's parental rights should be terminated based on four statutory grounds: (1) abandonment by failure to support, (2) abandonment by failure to visit, (3) persistence of the conditions leading to removal, and (4) failure to manifest an ability and willingness to personally assume custody of or financial responsibility for the Child.[2] Grandparents further averred that termination of Mother's parental rights was in the Child's best interest. On October 30, 2018, the trial court appointed attorney Misty Kennedy as the Child's guardian *ad litem*.

On November 21, 2018, the trial court received a hand-written, notarized letter from Mother, stating that she was responding to the summons and that she did not wish to willingly surrender her parental rights. On December 3, 2018, Grandparents filed a motion for default judgment. The trial court subsequently appointed counsel for Mother on January 20, 2019.

On February 26, 2019, Mother, now proceeding with counsel, filed an answer to Grandparents' petition. The guardian *ad litem* filed written recommendations on May 2, 2019. The trial court subsequently conducted a trial concerning the termination of Mother's parental rights on May 14, 2019. The only witnesses to testify were Grandparents, Mother, and Mother's adult daughter, Brittany G.

On May 21, 2019, the trial court entered an order terminating Mother's parental rights to the Child. The court found the ground of persistence of conditions leading to the Child's removal to be inapplicable, and the court also found that the ground of abandonment by failure to support had not been sufficiently proven. The court found that clear and convincing evidence existed to support the two remaining statutory grounds of abandonment by failure to visit and failure to manifest an ability and willingness to personally assume custody of or financial responsibility for the Child.[3] The court further found by clear and convincing evidence that termination of Mother's parental rights was in the Child's best interest. Mother timely appealed.

---

[1] Grandparents also sought to terminate the parental rights of the Child's father, Glen H. ("Father"). Father never filed a response to the petition, and his parental rights were later terminated by default judgment. Father is not participating in this appeal.

[2] Although Grandparents' petition listed the abandonment grounds as "willful" failure to visit and support, we note that the General Assembly removed willfulness as a statutory requirement and made it an affirmative defense effective July 1, 2018. *See* 2018 Tenn. Pub. Acts, Ch. 875, § 2 (H.B. 1856).

[3] We note that the trial court erroneously quoted the previous version of the statute by referring to the proven abandonment ground as "willful failure to visit." We will address this issue more thoroughly in Section IV of this Opinion.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly as follows:

1. Whether the trial court erred by finding clear and convincing evidence that Mother failed to visit in the four months prior to the petition's filing.

2. Whether there was clear and convincing evidence that Mother abandoned the Child by failing to pay or provide support.

3. Whether there was clear and convincing evidence that the Child was removed from Mother's home and that the conditions leading to removal persisted.

4. Whether the trial court erred by finding clear and convincing evidence that Mother failed to manifest an ability and willingness to personally assume custody of or financial responsibility for the Child.

5. Whether the trial court erred by determining that Grandparents had proven, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interest.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*,

92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.* 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).
>
> * * *
>
> In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). In addition, as our Supreme Court has explained, this Court is required "to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 525.

## IV. Grounds for Termination of Mother's Parental Rights

Tennessee Code Annotated § 36-1-113 (Supp. 2019) lists the statutory requirements for termination of parental rights, providing in relevant part:

(a)     The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c)     Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court determined that the evidence clearly and convincingly supported a finding of two statutory grounds to terminate Mother's parental rights: (1) abandonment through failure to visit the Child and (2) failure to manifest an ability and willingness to assume custody of or financial responsibility for the Child. Grandparents argue that the trial court also should have determined that the evidence clearly and convincingly supported a finding of two additional statutory grounds upon which to terminate Mother's parental rights: (1) abandonment by failure to support and (2) persistence of the conditions leading to removal. We will address each statutory ground in turn.

A.  Abandonment by Failure to Visit

Concerning statutory abandonment, Tennessee Code Annotated § 36-1-113(g)(1) (Supp. 2019) provides as relevant to this action:

(g)     Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g).  The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1)     Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Regarding the definition of abandonment applicable to this ground, Tennessee Code Annotated § 36-1-102(1)(A) (Supp. 2019) provides in relevant part:

(i)     For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

In the case at bar, Grandparents alleged in their original petition that Mother had abandoned the Child by failing to visit.  Because the termination petition was filed on October 24, 2018, the four-month determinative period would have begun on June 23, 2018, and ended on October 23, 2018 ("Determinative Period").  *See In re Joseph F.*, 492 S.W.3d 690, 702 (Tenn. Ct. App. 2016) (citing *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (explaining that the applicable four-month statutory period preceding filing of the termination petition ends on the day preceding filing)).

The evidence proffered at trial established that during the Determinative Period, Mother had no visits with the Child.  Mother admitted as much during her trial testimony.  On appeal, Mother contends that her failure to visit was not shown to be willful because (1) she had previously called and Grandparents had not answered the phone and (2) she had another baby in May 2018 and needed to focus on taking care of that child during the Determinative Period.  However, effective July 1, 2018, the General Assembly amended Tennessee Code Annotated § 36-1-102(1) to render the absence of willfulness to be solely an affirmative defense for cases filed as of the amendment's effective date. *See*

- 6 -

2018 Tenn. Pub. Acts, Ch. 875, § 2 (H.B. 1856); *see also In re Serenity S.*, No. E2019-00277-COA-R3-PT, 2020 WL 522439, at *7 (Tenn. Ct. App. Jan. 31, 2020). Inasmuch as the termination petition in the instant action was filed after July 1, 2018, the amendment eliminating "willfully" from this definition of statutory abandonment applies, as does the following statutory subsection added by the amendment:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I) (Supp. 2019).

We note that Mother did not plead lack of willfulness as an affirmative defense in her answer. Moreover, we emphasize that under the applicable version of the statute, the burden of proof for this affirmative defense is upon Mother. *See* Tenn. Code Ann. § 36-1-102(1)(I); *In re Nicholas C.*, No. E2019-00165-COA-R3-PT, 2019 WL 3074070, at *13 (Tenn. Ct. App. July 15, 2019) ("Under Tenn. Code Ann. § 36-1-102(1)[(I)], willfulness is an affirmative defense; thus, the burden is upon [the parent] to establish that his failure to visit was not willful."). As this Court has previously explained:

> Willfulness in the context of termination proceedings does not require the same standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will. *In re Audrey S.*, 182 S.W.3d at 863; *see also In re S.M.*, 149 S.W.3d 632, 642 (Tenn. Ct. App. 2004). Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts. *In re Audrey S.*, 182 S.W.3d at 863. "A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control." *In re Adoption of Angela E.*, 402 S.W.3d [636,] 640 [(Tenn. 2013)] (citing *In re Adoption of A.M.H.*, 215 S.W.3d [793,] 810 [(Tenn. 2007)] (holding that the evidence did not support a finding that the parents "intentionally abandoned" their child)).

*In re Alysia S.*, 460 S.W.3d 536, 565-66 (Tenn. Ct. App. 2014).

Mother argues that her failure to visit the Child was not willful because of her inability to contact Grandparents to arrange visitation and also because she was caring for a newborn child. Mother admitted, however, that she did not seek any visitation with the

Child during the Determinative Period, despite the fact that she knew where Grandparents lived and knew their phone number. Although Mother claimed that she had tried to call Grandparents concerning visitation in the months prior to the Determinative Period and received no response, Grandparents disputed this assertion. We note that in the trial court's oral ruling, a transcript of which was attached to and incorporated into the final order, the court found that Mother had "significant credibility issues."

Grandparents testified that they had responded to any messages from Mother and had previously facilitated Mother's visitation with the Child even when she was incarcerated. Although Grandparents acknowledged that they did not always answer calls from numbers that they did not recognize, they also stated that Mother had left no messages on their answering machine or voice mail that were ignored. Grandparents stated that the last contact they received from Mother was on January 31, 2018, when Mother called to wish her father a happy birthday but did not ask to speak to the Child. Mother did not dispute this testimony.

With regard to Mother's assertion that she was unable to visit during the Determinative Period because she was caring for a newborn child, we note that Mother's younger child was born on May 30, 2018. Mother testified that the child's delivery was normal and without complications. Mother further testified that if she had been able to hire a childcare provider, she could have sought employment six weeks following the baby's birth, which would have been approximately July 11, 2018. Mother never provided any evidence demonstrating how the birth of her younger child would have prevented her from visiting the Child during the Determinative Period.

Following our thorough review of the evidence, we conclude that Mother has failed to carry her burden of proving that she lacked willfulness in her failure to visit the Child during the Determinative Period, or that her failure to visit was "due to circumstances outside [her] control." *See In re Alysia S.*, 460 S.W.3d at 566. We determine that the evidence preponderates in favor of the trial court's finding, by clear and convincing evidence, of the statutory ground of abandonment by failure to visit.

B. Abandonment by Failure to Support

The statutory definition of abandonment by failure to financially support, detailed above, requires a determination of whether Mother "failed to support or [] failed to make reasonable payments toward the support of the child" for a period of four months preceding the termination petition's filing. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). This analysis would accordingly utilize the same Determinative Period as the ground of abandonment by failure to visit.

The statute also provides that "failed to support" or "failed to make reasonable payments toward such child's support" means "the failure, for a period of four (4)

consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child." *See* Tenn. Code Ann. § 36-1-102(1)(D). "That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period." *Id*. In addition, the statute provides: "Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." *See* Tenn. Code Ann. § 36-1-102(1)(H).

In the case at bar, Mother admitted that she had paid no support for the Child during the Determinative Period. The trial court determined, however, that Grandparents had "not proven willful nonpayment of child support during the four (4) month period due to the birth of the child and recognize that she would need a period of time that overlapped with that four (4) month period." We conclude that based upon the 2018 change in this statutory requirement eliminating the willfulness requirement, the trial court erred by requiring that Grandparents prove Mother's willfulness in her failure to pay or provide support.

As previously explained, lack of willfulness is an affirmative defense to this statutory ground and must be pled and proven by Mother. *See* Tenn. Code Ann. § 36-1-102(1)(I). Concerning the Determinative Period in this matter, Mother testified that she was unemployed and would have been able to seek employment in mid-July 2018 but for a lack of childcare for her newborn infant. Therefore, although the trial court erred in placing the burden of proof on Grandparents concerning Mother's lack of willfulness, we conclude that the trial court's error was harmless in this instance because Mother demonstrated a sufficient reason that she was unable to pay or provide support during the Determinative Period, thus proving that her lack of support was not willful. As such, there was a lack of clear and convincing evidence concerning the statutory ground of abandonment by failure to support.

C. Persistence of the Conditions Leading to the Child's Removal

The trial court further found that the statutory ground of persistence of the conditions leading to removal of the Child from Mother's custody was inapplicable to this matter. Regarding this statutory ground, Tennessee Code Annotated § 36-1-113(g)(3) (Supp. 2019) provides:

> (3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

- 9 -

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

With regard to this ground, the trial court stated:

I have looked at the [ground] alleged of persistent conditions. I have carefully read that statute and I do not believe that one applies to the facts of this case because there was no "removal." The word "removal" is used in that statute and in this particular case the mom and the child came to live with the grandparents and then the mom moved out and basically left the child there with the grandparents. So I find that [§] 36-1-113(g)(3) is not applicable.

We note, however, that the statute provides that this ground can apply whenever a child is removed "from the home or the physical or <u>legal custody</u> of a parent." *See* Tenn. Code Ann. § 36-1-113(g)(3)(A) (emphasis added). In this matter, the record reflects that the Child was removed from Mother's legal custody by the Claiborne County Juvenile Court's order dated January 30, 2017, following entry of that court's July 5, 2016 order finding the Child to be dependent and neglected. Accordingly, the trial court erred in determining that this statutory ground was inapplicable.

Because the Child was removed from Mother's legal custody on January 30, 2017, the Child had been removed for a period of more than six months by the time of the termination trial on May 14, 2019, in satisfaction of the statute's requirement. Following our thorough review of the evidence, we conclude that conditions existed "that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect,

preventing the child's safe return to the care of the parent." *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)(i).

The proof demonstrated that Mother and the Child had come to live with Grandparents in early 2016 after the Child accidentally ingested drugs at the home Mother shared with Father. Mother left shortly thereafter and returned to Father's home, leaving the Child with Grandparents. The proof also demonstrated that Mother had incurred criminal charges following the birth of the Child and was incarcerated for a period of time in 2017. Grandparents both testified that Mother had struggled with drug addiction for many years.

During her testimony, Mother claimed that she was no longer using drugs but stated that she believed that Father was. Mother acknowledged that she was still involved with Father, and when questioned regarding whether he lived at her residence, Mother replied that Father "comes and goes." Brittany G. stated that Father was living at the residence with Mother. Mother admitted that the residence where she lived was leased to Father and that she had no independent source of support. Mother also had no driver's license and no source of transportation other than public transportation.

Mother admitted that the Department of Children's Services opened a case when her youngest child was born in May 2018 because the child had suboxone in her system. Mother explained that she had been taking suboxone during her pregnancy because of her dependency on pain medication. Although Mother initially denied that she had incurred further criminal charges following her 2017 incarceration, after being confronted with copies of her criminal records, Mother admitted that she had pled guilty to a charge of prostitution in 2018. Mother further stated that she had resolved her drug issue on her own without the need for rehabilitation.

Based on our review of the evidence, we conclude that the conditions that led to the Child's removal from Mother's legal custody persisted, preventing the Child's safe return to Mother's care. Based on Mother's lack of forward progress during the time the Child has been removed from her custody, we also conclude that there is little likelihood that these conditions will be remedied at an early date so that the Child can be safely returned to Mother in the near future and, further, that the continuation of the parent and child relationship "greatly diminishes the Child's chances of early integration into a safe, stable, and permanent home." *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)(ii), (iii). We therefore determine that Grandparents presented clear and convincing evidence to support this statutory ground as well.

- 11 -

D. Failure to Manifest an Ability and Willingness to Assume
Custody of or Financial Responsibility for the Child

The trial court also found clear and convincing evidence to support termination of Mother's parental rights pursuant to Tennessee Code Annotated § 36-1-113(g)(14) (Supp. 2019), which provides as an additional ground for termination:

A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

This Court has recently explained the following with regard to this ground for termination of parental rights:

Essentially, this ground requires DCS to prove two elements by clear and convincing evidence. First, DCS must prove that [the parent] failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). DCS must then prove that placing the children in [the parent's] "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." *Id.*

* * *

We have made the following observations about what constitutes "substantial harm":

The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted).

- 12 -

*In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at \*7-8 (Tenn. Ct. App. Apr. 4, 2018) (additional internal citations omitted).

This Court has also previously held that the first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires the petitioner to prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child. *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at \*14 (Tenn. Ct. App. June 20, 2018); *but see In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at \*7 (Tenn. Ct. App. May 31, 2018) (reversing this ground for termination when parents were unable but had demonstrated willingness to assume custody and financial responsibility of their children). Concerning the standard of proof applicable to this statutory ground for termination, this Court has recently explained:

> Initially, there was a "split in authority" as to how the first element was proven. *See In re Colton B.*, [No. M2018-01053-COA-R3-PT,] 2018 WL 5415921, at \*9 [(Tenn. Ct. App. Oct. 29, 2018)]. "In *In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at \*7 (Tenn. Ct. App. May 31, 2018), a panel of this Court concluded that the first prong of the statute requires the petitioner to prove both an inability and an unwillingness of the parent to assume custody or financial responsibility for the child." *Id*. Because the parents at issue wanted custody, this negated a required element of the ground. *In re Ayden S.*, 2018 WL 2447044, at \*7.

> Another panel of this Court respectfully disagreed with that approach in *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at \*14 (Tenn. Ct. App. June 20, 2018), holding, instead, that

>> [T]he first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires that the petitioner prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child.

> Stated differently, "the parent must have 'manifest[ed], by act or omission, an ability and willingness.'" *Id*. at \*13 (quoting Tenn. Code Ann. § 36-1-113(g)(14)).

> Recently, members of this panel have endorsed the latter approach adopted in *In re Amynn K. See, e.g., In re H.S.*, No. M2019-00808-COA-

R3-PT, 2020 WL 1428777, (Tenn. Ct. App. Mar. 20, 2020) ("After careful consideration of the conflicting authorities, we accept DCS's invitation to follow the holding of *In re Amynn K.*"); *In re Jayda H.*, No. E2019-00855-COA-R3-PT, 2019 WL 6320503, at *9 (Tenn. Ct. App. Nov. 25, 2019) ("[C]onsistent with the discussion in the *In re Amynn K.* decision, we do not view a parent's demonstration of 'willingness' as fatal to this ground when accompanied by a failure to manifest the requisite 'ability.'"); see also *In re Bentley Q.*, No. E2019-00957-COA-R3-PT, 2020 WL 1181804, at *10 (Tenn. Ct. App. Mar. 11, 2020); *In re Serenity S.*, No. E2019-00277-COA-R3-PT, 2020 WL 522439, at *16 (Tenn. Ct. App. Jan. 31, 2020); *but see In re Neveah M.*, No. M2019-00313-COA-R3-PT, 2020 WL 1042502, at *16 (Tenn. Ct. App. Mar. 4, 2020) (following *In re Ayden S.* with one judge concurring in results only).

We also find guidance in our supreme court's decision in *In re Bernard T.*, 319 S.W.3d 586, 604 (Tenn. 2010), wherein the Court considered a similar ground for termination, applicable to putative fathers, which applies when "[t]he person has failed to manifest an ability and willingness to assume legal and physical custody of the child[.]" Tenn. Code Ann. § 36-1-113(g)(9)(A)(iv). The Court affirmed termination under this ground where the father had "manifested a commendable willingness to assume legal custody of all the children" but "conceded that he was unable to support the children financially and that he could not provide them with a stable residence." *Id*. According to the Court, "This testimony alone provide[d] clear and convincing evidence that [the father] [did] not presently have the ability to assume legal and physical custody of any of the children." *Id*. at 604-05.

* * *

It is important to note that the statute does not focus on a parent's bare subjective claim of willingness. Instead, it asks whether the parent "has failed to manifest, by act or omission, . . . [a] willingness to personally assume legal and physical custody[.]" Tenn. Code Ann. § 36-1-113(g)(14). In assessing a parent's willingness, "'we look for more than mere words.'" *In re Jaxx M.*, No. E2018-01041-COA-R3-PT, 2019 WL 1753054, at *9 (Tenn. Ct. App. Apr. 17, 2019) (quoting *In re Cynthia P.*, No. E2018-01937-COA-R3-PT, 2019 WL 1313237, at *8 (Tenn. Ct. App. Mar. 22, 2019)). A lack of effort can undercut a claim of willingness. *Id.*; *see, e.g., In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at *9 (Tenn. Ct. App. Nov. 25, 2019) ("While Mother's words have indicated that she is willing to resume custody and financial responsibility for her children, her actions have betrayed her unwillingness to make the effort

- 14 -

required for reunification."). "Parents must have demonstrated their willingness by attempting to overcome the obstacles that prevent them from assuming custody or financial responsibility for the child." *In re Jonathan M.*, [No. E2018-00484-COA-R3-PT,] 2018 WL 5310750, at *5 [(Tenn. Ct. App. Oct. 26, 2018)].

*In re Nevaeh B.*, No. E2019-01539-COA-R3-PT, 2020 WL 1527001, at *6-8 (Tenn. Ct. App. Mar. 31, 2020). *But see In re Isabella W.*, No. E2019-01346-COA-R3-PT, 2020 WL 2070392, at *11 (Tenn. Ct. App. Apr. 29, 2020) (majority opinion and dissenting opinion recognizing that a split of authority exists concerning this ground but with majority opinion agreeing with the holding in *In re Ayden S.* that "if a party proves only the 'ability' criterion or the 'willingness' criterion, the requirements of the statute are not met, and this ground may not serve as a basis for terminating parental rights.") (Swiney, C.J., dissenting in part).

In the instant action, we determine that Mother lacked both the ability and willingness to personally assume legal and physical custody of or financial responsibility for the Child. Mother continued to reside in a home with a known drug abuser and was unable to demonstrate that she had sufficiently resolved her own drug dependency issues. Mother had no source of income, no driver's license, and no method of transportation. Mother also continued to accrue criminal convictions. Based on these facts, Mother lacked the ability to assume custody of or responsibility for the Child.

Moreover, Mother lacked the willingness to assume custody of or financial responsibility for the Child, as demonstrated by her actions. Despite Mother's testimony that she desired to care for and have a relationship with the Child, her behavior during the time the Child was in Grandparents' custody tells a different story. As this Court has previously explained, although Mother's words have indicated that she is willing to resume custody and financial responsibility for the Child, her "actions have betrayed [Mother's] unwillingness to make the effort required for reunification." *See In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at *9 (Tenn. Ct. App. Nov. 25, 2019). It is well established that a parent's actions can demonstrate a lack of willingness to assume custody of or financial responsibility for the child. *See In re Keilyn O.*, No. M2017-02386-COA-R3-PT, 2018 WL 3208151, at *8 (Tenn. Ct. App. June 28, 2018); *In re Amynn K.*, 2018 WL 3058280, at *15.

Predicated upon our careful review of the record, we conclude that the evidence presented at trial further demonstrated that placing the Child in Mother's "legal and physical custody would pose a risk of substantial harm to [his] physical or psychological welfare." *See* Tenn. Code Ann. § 36-1-113(g)(14). We therefore determine that the trial court properly found the existence of this statutory ground based on clear and convincing evidence.

- 15 -

## V. Best Interest of the Child

Mother contends that Grandparents did not present sufficient evidence to support the trial court's finding by clear and convincing evidence that termination of her parental rights was in the best interest of the Child. We disagree. When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 ("'The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.'" (quoting *In re Angela E.*, 303 S.W.3d at 254)). Tennessee Code Annotated § 36-1-113(i) (Supp. 2019) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

- 16 -

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

As our Supreme Court recently explained regarding the best interest analysis:

"The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." In re Angela E., 303 S.W.3d at 254.

When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d at 555 (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme"

evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

In the instant action, the trial court concluded that the statutory factors weighed against maintaining Mother's parental rights to the Child. In its final judgment, the trial court specifically considered the above-listed statutory factors and made respective findings. Following our review of the evidence presented, we agree with the trial court's determination.

With regard to the first two statutory factors, the evidence demonstrated that Mother had not made an adjustment of her circumstances, conditions, or conduct such that it would be safe for the Child to reside with her. Mother had incurred multiple criminal charges since the Child had been in Grandparents' custody and had been incarcerated for a period of time. Mother also continued to reside with a known drug abuser, and she had failed to sufficiently remedy her own addiction issues. We determine that the first two factors militate in favor of terminating Mother's parental rights.

- 18 -

With respect to factors three through five, the trial court found that Mother had failed to visit with the Child during the Determinative Period. The court stated that "Mother has done virtually nothing to have any contact with her child." As a result, no meaningful relationship existed between Mother and Child. The court also determined that a change of caretakers would have a detrimental effect on the Child, and we agree. The proof established that Grandparents' home was the only home that the Child had really known. Furthermore, Grandparents testified that the Child was thriving and happy in their home and that they enjoyed a close and loving relationship with the Child. Moreover, the Child was safe with all of his needs met. Based on the evidence presented, we conclude that factors three through five also militate in favor of termination of Mother's parental rights.

In reference to factors six and seven, the proof demonstrated that Mother had subjected the Child to neglect when the Child was in her home and that no evidence established that Mother could provide a healthy and safe home for the Child. As the trial court found, Mother continued to reside in a home where drug activity took place. Mother had also continued to incur criminal charges.

Concerning factor eight and whether Mother's mental and emotional status would be conducive to caring for the Child, we note that Mother had never completed a rehabilitation program to address her substance abuse issues. Finally, with regard to the last factor, the trial court found and Mother acknowledged that she had not paid support for the Child during the Determinative Period.

Based on our thorough review of the evidence in light of the statutory factors, we conclude that the evidence presented does not preponderate against the trial court's determination by clear and convincing evidence that termination of Mother's parental rights was in the best interest of the Child. Having also determined that Grandparents established statutory grounds for termination, we affirm the trial court's termination of Mother's parental rights.

VI. Conclusion

For the foregoing reasons, we affirm the trial court's judgment terminating Mother's parental rights to the Child; however, we modify the judgment to include a determination of clear and convincing evidence concerning the additional statutory ground of persistence of the conditions leading to the Child's removal. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Mary G.

_____

THOMAS R. FRIERSON, II, JUDGE